UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------x
                                :

KATHY DORSEY and ARNOLD      :
THOMAS on behalf of themselves and  :    Docket No.:
all others similarly situated,         :
                                :    **CLASS ACTION COMPLAINT**

          Plaintiffs,       :

v.                        :    **JURY TRIAL DEMANDED**

COLGATE-PALMOLIVE COMPANY., :

         Defendant.      :

-------------------------------------------------x

       Plaintiffs Kathy Dorsey and Arnold Thomas (hereinafter "Plaintiffs"), on behalf of themselves and all others similarly situated, by their attorneys, allege the following upon information and belief, except for those allegations pertaining to Plaintiffs, which are based on their personal knowledge:

<u>**NATURE OF THE CTION**</u>

      1.    This action seeks to remedy the damages and injuries caused by Defendant Colgate-Palmolive Company (hereinafter "Defendant"), which manufactured, marketed, and sold Fabuloso cleaning products (hereinafter the "Products")[1] that were contaminated with bacteria that made the Products dangerous for consumers and their family members.

---

[1] The Products include, but are not limited to, Fabuloso Original Multi-Purpose Cleaner, Lavender Scent, 16.9oz + 30% Free Bonus Pack (22 FL oz); Fabuloso Multi Purpose Cleaner 2X Concentrated Formula, Lavender Scent, 56 FL oz; Fabuloso Multi Purpose Cleaner 2X Concentrated Formula Lavender Scent, 128 FL oz; Fabuloso Multi Purpose Cleaner 2X Concentrated Formula Lavender Scent, 169 FL oz; Fabuloso Multi Purpose Cleaner, Lavender Scent, 210 FL oz; Fabuloso Professional All Purpose Cleaner & Degreaser, Lavender Scent, 1 Gallon; Fabuloso Original Multi- Purpose Cleaner, Refreshing Lemon Scent, 16.9oz + 30% Free Bonus Pack (22 FL oz); Fabuloso Multi Purpose Cleaner 2X Concentrated Formula, Refreshing Lemon Scent, 33.8 FL oz; Fabuloso Multi Purpose Cleaner 2X Concentrated Formula, Refreshing Lemon Scent, 56 FL oz; Fabuloso Multi Purpose Cleaner 2X Concentrated Formula, Refreshing Lemon Scent, 128 FL oz; Fabuloso Multi Purpose Cleaner 2X Concentrated Formula, Refreshing Lemon Scent, 169 FL oz; Fabuloso Multi Purpose Cleaner 2X Concentrated Formula, Passion of Fruits Scent, 33.8 FL oz; Fabuloso Multi Purpose Cleaner 2X Concentrated Formula, Passion of Fruits Scent, 56 FL oz; Fabuloso Multi Purpose Cleaner 2X Concentrated Formula, Passion of Fruits Scent, 128 FL oz; Fabuloso Multi Purpose Cleaner 2X Concentrated Formula, Passion of Fruits Scent, 169 FL oz; Fabuloso Multi Purpose Cleaner Bleach Alternative 2X Concentrated Formula, Spring Fresh Scent, 56 FL oz;

1

2.      As described in further detail below, the Products contained a bacteria, including called *Pseudomonas aeruginosa* and *Pseudomonas Fluorescens* (collectively refrredto as "*Pseudomonas")*, which could lead to serious and life-threatening adverse health consequences. The risk of serious infection is particularly concerning for immunocompromised individuals who are highly susceptible to life threatening diseases and death from *Pseudomonas*.

3.      Defendant failed to disclose that the Products contained *Pseudomonas aeruginosa*.

4.      When Plaintiffs and the Class Members purchased the Products, they relied on Defendant's misrepresentations and omissions about the Products.

5.      Plaintiffs and other consumers relied on Defendant to sell products that are safe and free from harmful known substances, including *Pseudomonas*, and to promptly and clearly warn about the dangers of the Products.

6.      Plaintiffs and those similarly situated (hereinafter "Class Members") expected that the Products would not contain any harmful substances that Defendant did not disclose.

7.      Consequently, Plaintiffs and the Class Members were damaged and injured when Defendant manufactured and sold the Products contaminated by the bacteria that is harmful to consumers.

8.      Plaintiffs bring this action against Defendant on behalf of themselves and the Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

## FACTUAL BACKGROUND

9.      Defendant manufactures, markets, advertises, and sells cleaning products. Specifically, the Products are intended to clean the toughest dirt and grime and to deodorize

---

and Fabuloso Professional All Purpose Cleaner & Degreaser, Ocean Scent, 1 Gallon. The first eight digits of the lot code for the Products are 2348US78 through 236US78 and 3001US78 through 3023US78. The lot code is found on the back of the bottle of Fabuloso.

with one powerful solution. Defendant represents that using Fabulos will "fill your home with joy" and will "leave[] your home bright and clean."[2]

10.    On the bottles, Defendant represents that "Fabuloso is powerful and safe for multi-surfaces [and] cleans with a long lasting scent."

11.    Defendant recommends using the Products on "sinks, toilets, tubs, showers, kitchen and bathroom floors, sealed wood surfaces, appliances, counters, windows, mirrors, walls, doorknobs and furniture, and fill every room in your home with joy."[3]

12.    Since the COVID pandemic, sales of cleaning products have steadily increased as consumers have become more vigilant and bacteria-conscious.[4]

13.    Defendant has capitalized on consumers' desire for cleaning products, and indeed, consumers are willing to pay, and have paid, a premium for these products.

14.    Plaintiffs and consumers rely on Defendant to truthfully and honestly report the contents and risks of the Products.

15.    The Products' packaging and labeling does not identify *Pseudomonas*. Defendant lists the ingredients by saying "MADE JOYFULLY WITH:" and then lists the ingredients in the Products. However, Defendant does not disclose that the Products contain *Pseudomonas*. *Pseudomonas* is not listed in the ingredients section, nor is there any warning about the Products containing *Pseudomonas*. This leads reasonable consumers to believe the Products do not contain the dangerous *Pseudomonas* bacteria.

16.    The bacteria in the Products can survive on inanimate surfaces for months and can be transmitted through airborne exposure and contact with the skin. Consequently, the bacteria in the Products can infect people if the person is close to the applied surface or if the

---

[2] https://www.fabuloso.com/products/multi-purpose-cleaner/lavender
[3] Id.
[4] https://www.grandviewresearch.com/industry-analysis/household-cleaners-market-report#~:text=Report%20Overview,4.9%25%20from%202022%20to%202028.

person touches the applied surface.

17.     Moreover, inhaling or being exposed to the bacteria in the Products can cause illness and death.

18.     Defendant is in the unique and superior position of knowing the ingredients and raw materials used in manufacturing its Products and possesses unique and superior knowledge regarding the manufacturing process for the Products, the manufacturing process for the ingredients and raw materials in the Products, and the risks associated with those processes, such as the risk of *Pseudomonas* contamination.

19.     Accordingly, Defendant possesses superior knowledge regarding the risks involved in producing and manufacturing its Products. Such knowledge is not readily available to consumers like Plaintiffs and Class Members.

20.     Defendant has a duty to provide consumers, like Plaintiffs and Class Members, with accurate information about the contents of the Products.

21.     Defendant's false, misleading, and deceptive omissions regarding the Products containing *Pseudomonas* are likely to continue to deceive and mislead reasonable consumers and the public, as they have already deceived and misled Plaintiffs and the Class Members.

22.     Defendant's misrepresentations and omissions were material and intentional because people are concerned with the Products' ingredients that people inhale and touch. Consumers such as Plaintiffs and the Class Members are influenced by the marketing and advertising campaign for the Products, the Products' labels, and the listed ingredients. Defendant knows that if it had disclosed that the Products contained *Pseudomonas*, Plaintiffs and the Class would not have purchased or used the Products.

23.     On February 8, 2023 Defendant recalled the Products because of the "risk of bacteria growth in the recalled products" and noted that "[p]eople with weakened immune

4

systems, external medical devices, or underlying lung conditions,  who are exposed to the bacteria face a risk of serious infection that may require medical treatment. The bacteria can enter the body if inhaled, through the eyes, or through a break in the skin."[5]

24.    Defendant recalled 4.9 million bottles of the Products. The recall affects specific products produced between December 14, 2022 through January 23, 2023. Approximately one million bottles of the Products were released for sale to the public in the United States.

25.    The United States Consumer Product Safety Commission advised consumers to immediately stop using the Products.

26.    Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in deciding whether to buy and use the Products.

27.    Plaintiffs and the Class Members reasonably relied to their detriment on Defendant's misleading representations and omissions.

28.    Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiffs and the Class Members.

29.    Plaintiffs and Class Members read and relied on Defendant's representations about the benefits of using the Products, as well as the information on the Products' labels, and purchased and used Defendant's Products based thereon.  Had Plaintiffs and Class Members known the truth about the Products, *i.e.*, that they contained a harmful bacterium (*i.e. Pseudomonas*), Plaintiffs and the Class would not have been willing to purchase the Products at any price, or, at minimum would have paid less for the Products and

---

[5] *See https://www.fabuloso.com/recall.*

5

would not have used the Products.

## JURISDICTION AND VENUE

30.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d) in that (1) this is a class action involving more than 100 class members; (2) Plaintiff Dorsey is a citizen of Florida, Plaintiff Thomas is a citizen of Illinois, and Defendant Colgate-Palmolive Company is a citizen of New York; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

31.     This Court has personal jurisdiction over Defendant because Defendant has its headquarters in New York, New York, conducts and transacts business in New York, contracts to supply goods within New York, and supplies goods within New York. Defendant is registered as a public company and its stock trades on the New York Stock Exchange, located within this District.

32.     Venue is proper because Defendant and many Class Members reside in the Southern District of New York, and throughout New York, and a substantial part of the events or omissions giving rise to the claims in this case occurred in this District.

## PARTIES

### Plaintiffs

33.     Plaintiff Kathy Dorsey is a citizen and resident of Miami, Florida. During the applicable statute of limitations period, Plaintiff Dorsey purchased Defendant's Fabuloso Product that was subject to the recall of Defendant's Products.

34.     Had Defendant not made the false, misleading, and deceptive representations and omissions regarding the Products, Plaintiff Dorsey would not have purchased or used the Products. Plaintiff Dorsey purchased, purchased more of, and paid more for, the Products than she would have had Defendant disclosed the truth about the Products. The Products Plaintiff

Dorsey purchased were worthless because they were contaminated with the harmful *Pseudomonas*. Alternatively, Plaintiff Dorsey paid a price premium based on Defendant's false, misleading, and deceptive misrepresentations and omissions. Plaintiff was forced to incur additional expenses to clean and decontaminate her home upon learning that the Fabuloso was contaminated with bacteria.

35.    Accordingly, Plaintiff was damaged as a result of Defendant's improper conduct.

36.    Plaintiff Arnold Thomas is a citizen and resident of Sauk Village, Illinois. During the applicable statute of limitations period, Plaintiff Thomas purchased Defendant's Fabuloso Product that was subject to the Recall of Defendant's Products, and was injured by it. After using the contaminated Fabulos product, Plaintiff Thomas suffered from, and was diagnosed with, a bacterial infection, along with significant abdominal pain, diarrhea, dehydration, and other injuries as a result of the infection, all of which required him to seek medical treatment.

37.    Had Defendant not made the false, misleading, and deceptive representations and omissions regarding the Products, Plaintiff Thomas would not have purchased or used the Products and would have been able to understand and identify the cause of his injuries. Plaintiff Thomas purchased, purchased more of, and paid more for, the Products than he would have had Defendant disclosed the truth about the Products. The Products Plaintiff Thomas purchased were worthless because they were contaminated with the harmful *Pseudomonas*. Alternatively, Plaintiff Thomas paid a price premium based on Defendant's false, misleading, and deceptive misrepresentations and omissions. Accordingly, Plaintiff Thomas was injured in fact and was damaged as a result of Defendant's improper conduct.

**Defendant**

38.    Defendant, Colgate-Palmolive Company is a New York corporation with its principal place of business in New York, New York.  Colgate-Palmolive is one of the largest manufacturers of cleaning products in the United States and is responsible for producing some of the most popular consumer products, including the Products.

39.    Defendant manufactures, markets, advertises, and distributes the Products throughout the United States. Defendant created and/or authorized the false, misleading, and deceptive advertisements, packaging, and labeling of its Products.

## CLASS ALLEGATIONS

40.    Plaintiffs bring these claims on behalf of themselves and those similarly situated.  As detailed in this Complaint, Defendant manufactured and sold Products that were contaminated with *Pseudomonas,* failed to disclose that the Products contained that harmful bacteria, and failed to truthfully disclose the risks associated with the Products. Defendant's conduct, and its misrepresentations and omissions, were uniform throughout the Class Period. Accordingly, the claims in this Complaint are uniquely situated for class-wide resolution.

41.    The Class is defined as all consumers who purchased any of the contaminated Products in the United States during the Class Period and were damaged or injured by them.

42.    The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy.

43.    Numerosity:  Class Members are so numerous that joinder of all members is impracticable.  Plaintiffs believe that there are thousands of consumers who are Class Members as described above who have been damaged or injured by Defendant's conduct and practices.

44.    <u>Commonality</u>: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

    a.   When and how Defendant knew or suspected that certain of its Products were contaminated with bacteria, including *Pseudomonas*;

    b.   When Defendant was first notified that its Products contained *Pseudomonas*;

    c.   When Defendant formulated its plan to recall the Products;

    d.   Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

    e.   Whether Defendant's conduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices, negligence, or other improper conduct with respect to the advertising, marketing, and sale of its Products;

    f.   Whether Defendant made false and/or misleading statements and omissions to the Class and the public concerning the Products and the risks associated with those Products;

    g.   Whether Defendant's conduct concerning its Products was likely to deceive the public; and

    h.   Whether Plaintiffs and the Class are entitled to money damages under the same causes of action as the other Class Members.

45.    <u>Typicality</u>: Plaintiffs are members of the Class.  Plaintiffs' claims are typical of the claims of each Class Member in that every member of the Class was subjected to the same improper conduct by Defendant and purchased Defendant's contaminated Products.

46.    <u>Adequacy</u>: Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the Class Members they seek to represent, their claims are common to other Class members, they have a strong interest in vindicating their rights, they have retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

47.    <u>Predominance</u>: Pursuant to Rule 23(b)(3), common issues of law and fact identified above predominate over any other questions affecting only individual Class members.  The Class issues predominate over any individual issues because the focus of the case will be on Defendant's conduct, its failure to act, its failure to disclose the dangers of the Products, and Defendant's knowledge of its products being contaminated.

48.    <u>Superiority</u>: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

    a.  Joining hundreds or thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

    b.  The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

    c.  When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court (or by a Court-appointed claims administrator) and administered efficiently in a manner far less burdensome and expensive than if the parties attempted to determine the claims through filing, discovery, and trial of all individual cases;

d.  This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.  Plaintiffs know of no difficulty to be encountered in managing this action that would preclude maintaining it as a class action;

f.  This class action will assure uniformity of decisions among Class Members;

g.  The Class is readily definable and prosecuting this action as a class action will eliminate the possibility of repetitious litigation;

h.  Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by a single class action; and

i.  It would be desirable to concentrate in this single venue the litigation of all Class Members who were induced to purchase and use the contaminated Products by Defendant's uniform conduct.

49.    Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## CLAIMS

### FIRST CAUSE OF ACTION
### VIOLATION OF NEW YORK GBL § 349
**(On Behalf of Plaintiffs and the Class)**

50.    Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

51.    New York General Business Law Section 349 ("GBL § 349") declares

unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . . ."

52.    The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiffs and the Class Members seek monetary damages against Defendant, enjoining Defendant from inaccurately describing, labeling, marketing, and promoting the Products.

53.    There is no adequate remedy at law.

54.    Defendant misleadingly, inaccurately, and deceptively advertises and markets the Products to consumers.

55.    Defendant's improper consumer-oriented conduct—including failing to disclose that the Products contain *Pseudomonas*—is misleading in a material way in that it, *inter alia*, induced Plaintiffs and the Class Members to purchase Defendant's Products and to use the Products when they otherwise would not have purchased or used the Products. Defendant made the untrue and/or misleading statements and omissions willfully, wantonly, and with reckless disregard for the truth.

56.    Plaintiffs and the Class Members have been injured because they purchased Products that were mislabeled, unhealthy, and entirely worthless. Accordingly, Plaintiffs and the Class Members received less than what they bargained and paid for.

57.    Defendant's advertising and the Products' packaging and labeling induced Plaintiffs and the Class Members to buy Defendant's Products.

58.    Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiffs and the Class Members have been damaged thereby.

59.    These GBL claims seek more than simply the amounts that Plaintiffs and the

Class paid to purchase the contaminated Products.

60.    As a result of Defendant's recurring, "unlawful" deceptive acts and practices,

Plaintiffs and the Class Members are entitled to monetary, statutory, compensatory, treble and

punitive damages, restitution, and disgorgement of all moneys obtained by means of

Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**VIOLATION OF NEW YORK GBL § 350**
**(On Behalf of Plaintiffs and the Class)**

61.    Plaintiffs repeat and reallege each and every allegation contained in all the

foregoing paragraphs as if fully set forth herein.

62.    N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade, or
> commerce or in the furnishing of any service in this state is
> hereby declared unlawful.

63.    N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity,
> or of the kind, character, terms or conditions of any employment
> opportunity if such advertising is misleading in a material
> respect. In determining whether any advertising is misleading,
> there shall be taken into account (among other things) not only
> representations made by statement, word, design, device, sound
> or any combination thereof, but also the extent to which the
> advertising fails to reveal facts material in the light of such
> representations with respect to the commodity or employment to
> which the advertising relates under the conditions proscribed in
> said advertisement, or under such conditions as are customary
> or usual . . .

64.    Defendant's labeling and advertisements contained untrue and materially

misleading statements and omissions concerning its Products because Defendant

misrepresented that the Products are safe for use, failed to disclose that the Products contained

*Pseudomonas,* and failed to properly warn consumers about the risks of using the

contaminated, defective, and unsafe Products.

13

65.    Plaintiffs and the Class Members have been injured because they relied upon Defendant's labeling, packaging, and advertising and purchased Products that were contaminated, mislabeled, unhealthy, and entirely worthless.  Accordingly, Plaintiffs and the Class Members received less than what they bargained and paid for.

66.    Defendant's advertising, packaging, and the Products' labeling induced Plaintiffs and the Class Members to buy Defendant's Products.

67.    Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

68.    Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

69.    Defendant made the material misrepresentations described in this Complaint in its advertising and on the Products' packaging and labeling.

70.    Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large.  Moreover, all consumers purchasing the Products were, and continue to be, exposed to Defendant's material misrepresentations.

71.    These GBL claims seek more than simply the amounts that Plaintiffs and the Class paid to purchase the contaminated Products.

72.    As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiffs and the Class Members are entitled to monetary, statutory, compensatory, treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

## THIRD CAUSE OF ACTION
## STRICT PRODUCTS LIABILITY: FAILURE TO

14

**PROVIDE ADEQUATE WARNING**

73.    Plaintiff Thomas asserts this claim on behalf of himself and the Class.

74.    Plaintiff Thomas incorporates by reference each paragraph of this Complaint as if fully set forth herein and further alleges as follows.

75.    The Products manufactured and supplied by Defendant were defective due to inadequate warnings or instructions because Defendant knew or should have known that the Products contained *Pseudomonas* and created significant risks of serious bodily harm to consumers, but Defendant failed to adequately warn consumers of such risks.

76.    Defendant knew or, in the exercise of reasonable care, should have known that the Products contained *Pseudomonas* but were marketed to be used to clean surfaces. Defendant failed to adequately warn about the risk to Plaintiff and consumers, including the risk of illness, infection, and severe adverse reactions.

77.    Defendant failed to provide the warnings or instructions that a manufacturer exercising reasonable care would have provided concerning the risk of injuries from use and repeated use of the Products containing *Pseudomonas* in light of the likelihood that the Products would cause the harm claimed in this Complaint and in light of the likely seriousness of that harm.

78.    Defendant, as the manufacturer of the Products, is held to the level of knowledge of an expert in the field of that type of cleaning product and had a duty to warn consumers of the dangers associated with its Products but failed to do so.

79.    Defendant failed to reasonably or adequately warn users of the risks of its Products containing *Pseudomonas* for the following reasons, among others:

    a.   Defendant minimized and downplayed the risks associated with its products containing *Pseudomonas* that it chose to disclose;

b.  Defendant received reports of problems with the Products, but Defendant failed to warn Plaintiff and the Class about the reports and about the possibility of being injured by using the Products; and

c.  The Products failed to display and advise of the Products' risks, proper use, or need to test the Products in an effective and reasonable manner.

80.  The Products manufactured and supplied by Defendant were defective due to the existence of *Pseudomonas*, and the inadequate post-marketing warning or instruction because, after Defendant knew or should have known of the risk of contamination, illness, and serious bodily harm, as set forth herein, from the use of the Products, Defendant failed to provide an adequate warning to consumers of the Products, knowing the Products could cause serious injury as set forth herein.

81.  Plaintiff Thomas read and followed the deficient directions that were provided with Defendant's Products. Defendant's inadequate directions and packaging were a substantial factor in causing Plaintiff Thomas's damages and injuries. As a direct and proximate result of Plaintiff's use of the Products designed, sold, supplied, marketed, and introduced into the stream of commerce by Defendant, Plaintiff Thomas suffered harm and damages and will continue to suffer such harm and damages in the future.

82.  As a result of Defendant's failure to adequately warn, Plaintiff Thomas and the Class are entitled to damages from Defendant. Further, Defendant's actions and omissions as identified in this Complaint constitute a flagrant disregard for human life.

**FOURTH CAUSE OF ACTION**
**STRICT PRODUCTS LIABILITY: DESIGN DEFECT**

83.  Plaintiff Thomas asserts this claim on behalf of himself and the Class.

84.  Plaintiff incorporates by reference each paragraph of this Complaint as if fully set forth herein and further allege as follows.

85. Defendants manufactured, designed, distributed, sold, and/or supplied the Products containing *Pseudomonas* bacteria.

86. The Products manufactured and supplied by Defendant were defective in design or formulation in that, when the Products left the hands of the Defendant, the foreseeable risks of the Products exceeded the benefits associated with their design or formulation, and the Products were more dangerous than an ordinary consumer would expect.

87. The Products that the Plaintiff and the Class members used had not been materially altered or modified prior to their use.

88. The Products were defectively designed because they contained the unreasonably dangerous bacteria *Pseudomonas*, and there are reasonably safer and effective alternatives to the bacteria included in the Products.

89. The Products also were defectively designed because their cautions and/or warnings are inadequate, as set forth in the Complaint, for the following reasons, among others:

(a) The Products failed to warn that the Products contained the bacteria *Pseudomonas* and failed to warn about reports of adverse reactions, including infection and illness;

(b) The Products failed to warn that they contained bacteria that can increase the risk of infection and illness;

(c) Defendant minimized and downplayed the risks associated with the Products containing bacteria, including the risk of infection, lung injury, and increased risk of other illnesses; and

(d) The Products failed to display and advise of the Products' risks, proper use, or the possible risk of exposure to bacteria, in an effective and reasonable manner.

90.     By marketing the Products and designing them such that they were not reasonably safe, despite the availability of safer alternatives, and failing to sufficiently warn users of the dangers, Defendant was a substantial factor in causing injuries to Plaintiff and the Class.

91.     As a direct and proximate result of Plaintiff and the Class using the contaminated Products that were manufactured, designed, sold, supplied, marketed and introduced into the stream of commerce by Defendant, Plaintiff and the Class suffered harm and damages and will continue to suffer such harm, damages and loss in the future.

92.     As a direct and proximate result of the foregoing, Plaintiff and the Class are entitled to damages. Further, Defendant's actions and omissions as identified in this Complaint constitute a flagrant disregard for human life, warranting exemplary and punitive damages.

**FIFTH CAUSE OF ACTION**
**STRICT PRODUCTS LIABILITY: FAILURE TO PROVIDE**
**ADEQUATE WARNING**

93.     Plaintiff Thomas asserts this claim on behalf of himself and the Class.

94.     Plaintiff incorporates by reference each paragraph of this Complaint as if fully set forth herein and further alleges as follows.

95.     The Products manufactured and supplied by Defendant, were defective due to inadequate warnings or instructions because Defendant knew or should have known that the Products created significant risks of serious bodily harm to consumers, but Defendant failed to adequately warn consumers of such risks.

96.     Defendant knew or, in the exercise of reasonable care, should have known that Defendant was marketing and selling the Products containing bacteria to be used repeatedly as a cleaning agent and that because of the contamination the Products present a risk of severe reactions, including infections and other adverse reactions.

97.    Defendant failed to provide the warnings or instructions that a manufacturer exercising reasonable care would have provided concerning the risk of injuries from use and repeated use of the Products containing bacteria in light of the likelihood that the Products would cause the harm claimed by Plaintiff and the Class and in light of the likely seriousness of that harm.

98.    Defendant, as the manufacturer of the Products, is held to the level of knowledge of an expert in the field of that type of cleaning products, and had a duty to warn consumers of the dangers associated with the Products but failed to do so.

99.    Defendant failed to reasonably or adequately warn users of the risks of the Products containing bacteria for the following reasons, among others:

   a.    Defendant failed to disclose, and minimized and downplayed the risks associated with the Products containing bacteria;

   b.    Defendant received reports of people suffering illness after using the Products containing bacteria but Defendant failed to warn Plaintiff and the Class about the reports and about the possibility of being injured by using the Products; and

   c.    The Products failed to display and advise of the Products' risks and proper use in an effective and reasonable manner.

100.    The Products manufactured and supplied by Defendant were defective due to inadequate post-marketing warnings or instructions because, after Defendant knew or should have known of the risk of serious bodily harm, as set forth herein, from the use of the Products, Defendant failed to provide an adequate warning to consumers of the Products, knowing the Products could cause serious injury as set forth herein.

101.    Plaintiff read and followed the deficient directions that were provided with

19

Defendant's Products. Defendant's inadequate directions and packaging were a substantial factor in causing injuries to Plaintiffs and the Class. As a direct and proximate result of Plaintiff and the Class using the Products as designed, sold, supplied, marketed, and introduced into the stream of commerce by Defendant, Plaintiff and the Class suffered harm and damages and will continue to suffer such harm and damages in the future.

102.   As a result of Defendant's failure to adequately warn Plaintiff and the Class, Plaintiff and the Class are entitled to damages from Defendant. Further, Defendant's actions and omissions as identified in this Complaint constitute a flagrant disregard for human life.

## SIXTH CAUSE OF ACTION
## NEGLIGENCE

103.   Plaintiff Thomas asserts this claim on behalf of himself and the Class.

104.   Plaintiff incorporates by reference each paragraph of this Complaint as if fully set forth herein and further allege as follows.

105.   Defendant had a duty to exercise reasonable care in designing, manufacturing, testing, marketing, and distributing into the stream of commerce the Products, including a duty to ensure that the Products did not pose a significantly increased risk of injury to Plaintiff, the Class, and other consumers.

106.   Defendant failed to exercise reasonable care in designing, manufacturing, testing, marketing and distributing into the stream of commerce the Products containing bacteria. Defendant knew or should have known that the Products are marketed to be used on a regular basis to clean homes, and presented a risk of severe injuries, giving rise to pain and suffering, debilitation, and the need for medical treatment and therefore were not safe for use by Plaintiffs, the Class, or other consumers.

107.   Defendant failed to exercise reasonable care by failing to sufficiently warn consumers of the risks associated with the Products.

108.   Although Defendant knew or should have known that the Products containing bacteria could cause severe reactions in consumers and therefore give rise to pain and suffering, debilitation, and the need for medical treatment, Defendant continued to market the Products containing bacteria without disclosing the risks or that the Products contained harmful bacteria.

109.   Although Defendant knew or should have known that the Products containing bacteria could cause infections, illnesses, skin injury, and other severe reactions in consumers and therefore give rise to pain and suffering, debilitation, and the need for medical treatment, Defendant failed to use ordinary care in warning Plaintiff, the Class, and other consumers about these risks.

110.   As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered significant damages, including physical injury, and pain and suffering and will continue to suffer such damages in the future.

111.   Defendant's actions and omissions were malicious, wanton, oppressive, and/or reckless.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues.

**WHEREFORE**, Plaintiffs, on behalf of themselves and the Class, pray for judgment as follows:

(a)    Declaring this action to be a proper class action and certifying Plaintiffs as the representatives of the Class under Rule 23 of the Federal Rules of Civil Procedure;

(b)    An Order requiring Defendant to establish a blood testing program for Plaintiffs and the Class, as well as to establish a medical monitoring protocol for Plaintiffs and the Class to monitor individuals' health and diagnose at an early stage any ailments associated with exposure to *Pseudomonas*;

(c)    Awarding monetary damages, punitive, and treble damages;

(d)     Awarding statutory damages of $50 per transaction, and treble damages for knowing and willful violations, pursuant to N.Y. GBL § 349;

(e)     Awarding statutory damages of $500 per transaction pursuant to N.Y. GBL § 350;

(f)     Awarding Plaintiffs and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiffs' attorneys, experts, and reimbursement of Plaintiffs' expenses; and

(g)     Granting such other and further relief as the Court may deem just and proper.

Dated: February 21, 2023

SQUITIERI & FEARON, LLP

By: _____
        Stephen J. Fearon, Jr.
        Paul V. Sweeny
305 Broadway
7th Floor
New York, New York 10007
Telephone: (212) 421-6492
Facsimile: (212) 421-6553
Email: Stephen@sfclasslaw.com
Email: Paul@sfclasslaw.com

Attorneys for Plaintiffs