UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
                                                                                 :

ARNOLD THOMAS on behalf of himself   :    Docket No.: 7:23-cv-01426-VB
And all others similarly situated,         :
                                          :    **AMENDED CLASS ACTION**
                                          :    **COMPLAINT**
                 Plaintiff,              :
                                          :
             v.                    :    **JURY TRIAL DEMANDED**
                                          :
COLGATE-PALMOLIVE COMPANY.,     :
                                          :
                Defendant.           :
                                          :
--------------------------------------------------------x

Plaintiff Arnold Thomas (hereinafter "Plaintiff"), on behalf of himself and all others similarly situated, by his attorneys, alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on his personal knowledge:

## NATURE OF THE CTION

1. This action seeks damages for personal injuries caused by Defendant Colgate-Palmolive Company (hereinafter "Defendant"), which manufactured, marketed, and sold Fabuloso cleaning products (hereinafter the "Products")[1] that were contaminated with bacteria, making the Products dangerous for consumers and their family members.

---

[1] The Products include, but are not limited to, Fabuloso Original Multi-Purpose Cleaner, Lavender Scent, 16.9oz + 30% Free Bonus Pack (22 FL oz); Fabuloso Multi Purpose Cleaner 2X Concentrated Formula, Lavender Scent, 56 FL oz; Fabuloso Multi Purpose Cleaner 2X Concentrated Formula Lavender Scent, 128 FL oz; Fabuloso Multi Purpose Cleaner 2X Concentrated Formula Lavender Scent, 169 FL oz; Fabuloso Multi Purpose Cleaner, Lavender Scent, 210 FL oz; Fabuloso Professional All Purpose Cleaner & Degreaser, Lavender Scent, 1 Gallon; Fabuloso Original Multi- Purpose Cleaner, Refreshing Lemon Scent, 16.9oz + 30% Free Bonus Pack (22 FL oz); Fabuloso Multi Purpose Cleaner 2X Concentrated Formula, Refreshing Lemon Scent, 33.8 FL oz; Fabuloso Multi Purpose Cleaner 2X Concentrated Formula, Refreshing Lemon Scent, 56 FL oz; Fabuloso Multi Purpose Cleaner 2X Concentrated Formula, Refreshing Lemon Scent, 128 FL oz; Fabuloso Multi Purpose Cleaner 2X Concentrated Formula, Refreshing Lemon Scent, 169 FL oz; Fabuloso Multi Purpose Cleaner 2X Concentrated Formula, Passion of Fruits Scent, 33.8 FL oz; Fabuloso Multi Purpose Cleaner 2X Concentrated Formula, Passion of Fruits Scent, 56 FL oz; Fabuloso Multi Purpose Cleaner 2X Concentrated Formula, Passion of Fruits Scent, 128 FL oz; Fabuloso Multi Purpose Cleaner 2X Concentrated Formula, Passion of Fruits Scent, 169 FL oz; Fabuloso Multi Purpose Cleaner Bleach Alternative 2X Concentrated Formula, Spring Fresh Scent, 56 FL oz; and Fabuloso Professional

2. As described below, the Products contained bacteria, including *Pseudomonas aeruginosa* and *Pseudomonas Fluorescens* (collectively referred to as "*Pseudomonas*"), which could lead to serious and life-threatening adverse health consequences. The risk of serious infection is particularly concerning for immunocompromised individuals who are highly susceptible to life threatening diseases and death from *Pseudomonas*.

3. Defendant failed to disclose that the Products contained *Pseudomonas*.

4. When Plaintiff and the Class Members used the Products, they relied on Defendant's misrepresentations and omissions about the Products.

5. Plaintiff and other consumers relied on Defendant to sell products that are safe and free from harmful known substances, including *Pseudomonas*, and to promptly and clearly warn about the dangers of the Products.

6. Plaintiff and those similarly situated (hereinafter "Class Members") expected that the Products would not contain any harmful substances that Defendant did not disclose.

7. Consequently, Plaintiff and the Class Members were physically injured when Defendant manufactured and sold the Products contaminated by the bacteria that is harmful to consumers.

8. Plaintiff brings this action against Defendant on behalf of himself and the Class Members who were physically injured by the Products during the applicable statute of limitations period (the "Class Period").

## FACTUAL BACKGROUND

9. Defendant manufactures, markets, advertises, and sells cleaning products. Specifically, the Products are intended to clean the toughest dirt and grime and to deodorize with

---

All Purpose Cleaner & Degreaser, Ocean Scent, 1 Gallon. The first eight digits of the lot code for the Products are 2348US78 through 236US78 and 3001US78 through 3023US78. The lot code is found on the back of the bottle of Fabuloso.

one powerful solution. Defendant represents that using Fabuloso will "fill your home with joy" and will "leave[] your home bright and clean."[2]

10. On the bottles, Defendant represents that "Fabuloso is powerful and safe for multi-surfaces [and] cleans with 24 [hour] long lasting scent."

11. Defendant recommends using the Products on "sinks, toilets, tubs, showers, kitchen and bathroom floors, sealed wood surfaces, appliances, counters, windows, mirrors, walls, doorknobs and furniture, and fill every room in your home with joy."[3]

12. Since the COVID pandemic, sales of cleaning products have steadily increased as consumers have become more vigilant and bacteria-conscious.[4]

13. Plaintiff and consumers rely on Defendant to truthfully and honestly report the contents and risks of the Products.

14. The Products' packaging and labeling does not identify *Pseudomonas*. Defendant lists the ingredients by saying "MADE JOYFULLY WITH:" and then lists the ingredients in the Products. However, Defendant does not disclose that the Products contain *Pseudomonas*. *Pseudomonas* is not listed in the ingredients section, nor is there any warning about the Products containing *Pseudomonas*. This leads Plaintiff and other reasonable consumers to believe the Products do not contain the dangerous *Pseudomonas* bacteria.

15. The bacteria in the Products can survive on inanimate surfaces for months and can be transmitted through airborne exposure and contact with the skin. Consequently, the bacteria in the Products can infect people if the person is close to the applied surface or if the person touches the applied surface.

---

[2] https://www.fabuloso.com/products/multi-purpose-cleaner/lavender
[3] Id.
[4] https://www.grandviewresearch.com/industry-analysis/household-cleaners-market-report#:~:text=Report%20Overview,4.9%25%20from%202022%20to%202028.

3

16. Moreover, inhaling or being exposed to the bacteria in the Products can cause illness and death.

17. Defendant is in the unique and superior position of knowing the ingredients and raw materials used in manufacturing its Products and possesses unique and superior knowledge regarding the manufacturing process for the Products, the manufacturing process for the ingredients and raw materials in the Products, and the risks associated with those processes, such as the risk of *Pseudomonas* contamination.

18. Accordingly, Defendant possesses superior knowledge regarding the risks involved in producing and manufacturing its Products. Such knowledge is not available to consumers like Plaintiff and Class Members.

19. Defendant has a duty to provide consumers, like Plaintiff and Class Members, with accurate information about the contents of the Products.

20. On February 8, 2023, Defendant recalled the Products because of the "risk of bacteria growth in the recalled products" and noted that "[p]eople with weakened immune systems, external medical devices, or underlying lung conditions, who are exposed to the bacteria face a risk of serious infection that may require medical treatment. The bacteria can enter the body if inhaled, through the eyes, or through a break in the skin." Defendant further admitted that the recall was required because "a preservative was not added at the intended levels during manufacturing."[5]

21. Defendant recalled 4.9 million bottles of the Products. The recall affects specific products produced between December 14, 2022 through January 23, 2023. Approximately one million bottles of the Products were released for sale to the public in the United States.

22. The United States Consumer Product Safety Commission advised consumers to immediately stop using the Products.

---

[5] See https://www.fabuloso.com/recall.

4

**JURISDICTION AND VENUE**

23. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d) in that (1) this is a class action involving more than 100 class members; (2) Plaintiff is a citizen of Illinois and Defendant Colgate-Palmolive Company is a citizen of New York; and (3) the amount in controversy exceeds $5,000,000, exclusive of interests and costs.

24. This Court has personal jurisdiction over Defendant because Defendant has its headquarters in New York, New York, conducts and transacts business in New York, contracts to supply goods within New York, and supplies goods within New York. Defendant is registered as a public company and its stock trades on the New York Stock Exchange, located within this District.

25. Venue is proper because Defendant and many Class Members reside in the Southern District of New York, and throughout New York, and a substantial part of the events or omissions giving rise to the claims in this case occurred in this District.

**PARTIES**

*Plaintiff*

26. Plaintiff Arnold Thomas is a citizen and resident of Sauk Village, Illinois. During the applicable statute of limitations period, Plaintiff Thomas purchased a contaminated Fabuloso Product containing *Pseudomonas*, manufactured by Defendant, and subject to the Recall of Defendant's Products, suffering injured as a result. Plaintiff's Fabuloso bottle had lot number 035000995025, which is covered by Defendant's recall.

27. After using the contaminated Fabuloso product, Plaintiff Thomas suffered from, and was diagnosed with, a bacterial infection, along with significant abdominal pain, diarrhea, dehydration, sores and symptoms and injuries commonly associated with a *Pseudomonas*

5

infection. Plaintiff's injuries were caused by *Psuedomonas* contained in the contaminated Product, and he was required to seek medical treatment for the injuries caused by the *Psuedomonas* contained in the contaminated Product. Plaintiff's treating medical professional told Plaintiff that she believed his injuries were caused by *Pseudomonas*.

28.   When purchasing and using the Product, Plaintiff reviewed the Product labeling and reviewed the Product instructions. Had Defendant not misrepresented the safety and efficacy of the Product and omitted to warn about the contamination (including *Pseudomonas*), and the lack of preservatives in the Products, Plaintiff would not have purchased or used the Products and would have been able to understand and identify the cause of his injuries. Plaintiff was physically injured by Defendant's Product and by Defendant's improper conduct.

*Defendant*

29.   Defendant Colgate-Palmolive Company is a New York corporation with its principal place of business in New York, New York.  Colgate-Palmolive is one of the largest manufacturers of cleaning products in the United States and is responsible for producing some of the most popular consumer products, including the Products.

30.   Defendant manufactures, markets, advertises, and distributes the Products throughout the United States from its New York headquarters. From there, Defendant oversaw the production, promotion, distribution, and sale of various consumer products, including the Products. Defendant's sales and marketing leadership, as well as its accounting, financial, and legal departments, are all based in its New York headquarters. Furthermore, Defendant's marketing, analysis, and sales and financial documents were created and are located at its New York headquarters.

31.   Defendant's participation in packaging, designing, marketing, and distributing the

6

Products from New York means New York has the greatest interest in the subject matter of this lawsuit. Defendant — from its New York headquarters — collaborated in developing, manufacturing, distributing, and recalling the Products.

## **CLASS ALLEGATIONS**

32. Plaintiff brings these claims on behalf of himself and those similarly situated. Defendant manufactured and sold Products that were contaminated with *Pseudomonas,* failed to disclose that the Products contained harmful bacteria and contained inadequate preservatives, and failed to disclose the risks associated with the Products. Defendant's conduct was uniform throughout the Class Period. Accordingly, the claims in this Complaint are uniquely situated for class-wide resolution.

33. The Class is defined as all consumers who purchased any of the contaminated Products in the United States during the Class Period and were physically injured after using the Products.

34. The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy.

35. Numerosity: Class Members are so numerous that joining all members is impracticable. Plaintiff believes that there are hundreds of consumers who are Class Members as described above who have been injured by Defendant's conduct and practices.

36. Commonality: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

    a. When and how Defendant knew or suspected that certain of its Products lacked the proper preservatives or were contaminated with bacteria,

7

including *Pseudomonas*;

b. When Defendant was first notified that its Products lacked the proper preservatives or contained *Pseudomonas*;

c. When Defendant formulated its plan to recall the Products;

d. Whether Defendant is responsible for the conduct alleged herein which injured the Class members;

e. Whether Defendant's conduct set forth in this Complaint demonstrates that Defendant has engaged in negligence or other improper conduct with respect to marketing and selling its Products;

f. Whether Defendant manufactured and sold defective and dangerous Products to the Class; and

g. Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members.

37. Typicality: Plaintiff is a member of the Class. Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was subjected to the same improper conduct by Defendant and purchased and was injured by Defendant's contaminated Products.

38. Adequacy: Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the Class Members he seeks to represent, his claims are common to other Class members, he has a strong interest in vindicating his rights, he has retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

39. Predominance: Pursuant to Rule 23(b)(3), common issues of law and fact identified above predominate over any other questions affecting only individual Class members. The Class issues predominate over any individual issues because the focus of the case will be on Defendant's conduct, its failure to act, its failure to disclose the dangers of the Products, and

Defendant's knowledge of its products being contaminated.

40. <u>Superiority</u>: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

  a. Joining hundreds of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

  b. The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

  c. When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court (or by a Court-appointed claims administrator) and administered efficiently in a manner far less burdensome and expensive than if the parties attempted to determine the claims through filing, discovery, and trial of all individual cases;

  d. This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

  e. Plaintiff knows of no difficulty to be encountered in managing this action that would preclude maintaining it as a class action;

  f. This class action will assure uniformity of decisions among Class Members;

  g. The Class is readily definable and prosecuting this action as a class action will eliminate the possibility of repetitious litigation;

  h. Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by a single class action; and

  i. It would be desirable to concentrate in this single venue the litigation of all Class Members who were induced to purchase and use the contaminated Products by Defendant's uniform conduct.

41. New York has the greatest interest in the subject matter of this lawsuit and New York law applies. To the extent the laws of other states apply, there is no material difference in the laws of those states that would impact adjudicating the Class claims.

42. Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

43. Alternatively, to the extent that class certification under Rule 23(a) and (b) cannot be obtained (which cannot be determined at this stage of the case), the following issues of fact or law are common to all Class members and can be resolved on behalf of the Class through Rule 23(c)(4):

   a. When and how Defendant knew or suspected that certain of its Products were contaminated with bacteria, including *Pseudomonas*;

   b. When Defendant was first notified that its Products contained *Pseudomonas*;

   c. When Defendant formulated its plan to recall the Products;

   d. Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

   e. Whether Defendant's conduct set forth in this Complaint demonstrates that Defendant has engaged in negligence or other improper conduct with respect to marketing and selling its Products;

   f. Whether Defendant manufactured and sold defective and dangerous Products to the Class; and

   g. Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members.

44. Plaintiff cannot be certain of the form and manner of proposed notice to Class members until the Class is finally defined and discovery is completed regarding the identity of class members. Plaintiff anticipates, however, that notice by mail will be given to Class members who can be identified specifically. In addition, notice may be published in appropriate publications, on the internet, in press releases and in similar communications in a way that is

targeted to reach Class members.

## FIRST CAUSE OF ACTION
### STRICT PRODUCT LIABILITY:
### FAILURE TO PROVIDE ADEQUATE WARNING

45. Plaintiff asserts this claim on behalf of himself and the Class.

46. Plaintiff incorporates by reference each paragraph of this Complaint as if fully set forth herein.

47. The Products manufactured and supplied by Defendant were defective due to inadequate warnings or instructions because before Plaintiff purchased the Products, Defendant knew or should have known that the Products did not contain the proper amount of preservatives, contained *Pseudomonas*, and created significant risks of serious bodily harm to consumers, but Defendant failed to adequately warn consumers and Plaintiff of such risks.

48. Defendant knew or, in the exercise of reasonable care, should have known that the Products contained inadequate preservatives and contained *Pseudomonas* but were marketed to be used to clean surfaces. Defendant failed to adequately warn about the risk to Plaintiff and consumers, including the risk of illness, infection, and severe adverse reactions.

49. Defendant failed to provide the warnings or instructions that a manufacturer exercising reasonable care would have provided concerning the risk of injuries from use and repeated use of the Products containing inadequate preservatives and containing *Pseudomonas* in light of the likelihood that the Products would cause the harm claimed in this Complaint and in light of the likely seriousness of that harm.

50. Defendant, as the manufacturer of the Products, is held to the level of knowledge of an expert in the field of that type of cleaning product and had a duty to warn consumers of the dangers associated with its Products but failed to do so.

51. Defendant failed to reasonably or adequately warn users of the risks of its Products containing *Pseudomonas* for the following reasons, among others:

    a. Defendant minimized and downplayed the risks associated with its products containing *Pseudomonas* that it chose to disclose;

    b. Defendant received reports of problems with the Products, but Defendant failed to warn Plaintiff and the Class about the reports and about the possibility of being injured by using the Products; and

    c. The Products failed to display and advise of the Products' risks, proper use, or need to test the Products in an effective and reasonable manner.

52. The Products manufactured and supplied by Defendant were defective due to the existence of *Pseudomonas*, as well as the use of an inadequate preservative, in the Products, and the inadequate post-marketing warnings or instructions because, after Defendant knew or should have known of the risk of contamination, illness, and serious bodily harm, as set forth herein, from the use of the Products, Defendant failed to provide an adequate warning to consumers of the Products, knowing the Products could cause serious injury as set forth herein.

53. Plaintiff read and followed the deficient directions that were provided with Defendant's Products. Defendant's inadequate directions and packaging were a substantial factor in causing Plaintiff's injuries. As a direct and proximate result of Plaintiff's use of the Products designed, sold, supplied, marketed, and introduced into the stream of commerce by Defendant, Plaintiff Thomas was injured, harmed, and damaged, and will continue to suffer harm and damages in the future.

54. As a result of Defendant's failure to adequately warn, Plaintiff Thomas and the Class are entitled to damages from Defendant. Further, Defendant's actions and omissions as identified in this Complaint constitute a flagrant disregard for human life.

## SECOND CAUSE OF ACTION
## STRICT PRODUCT LIABILITY: DESIGN DEFECT

55. Plaintiff asserts this claim on behalf of himself and the Class.

56. Plaintiff incorporates by reference each paragraph of this Complaint as if fully set forth herein.

57. Defendant manufactured, designed, distributed, sold, and/or supplied the Products containing *Pseudomonas* bacteria and inadequate preservatives.

58. The Products were unreasonably dangerous and unfit for sale based on a design defect: the failure to include or use preservatives or antimicrobial biocidal agents or the failure to include adequate or sufficient preservatives or antimicrobial or biocidal agents. The design defect made the Products unreasonably susceptible to bacterial contamination, including contamination by *Pseudomonas*.

59. The Products manufactured and supplied by Defendant were defective in design or formulation in that, when the Products left Defendant's hands, the foreseeable risks of the Products exceeded the benefits associated with their design or formulation, and the Products were more dangerous than an ordinary consumer would expect.

60. The Products' defective design and the *Pseudomonas* contamination could have been reduced or avoided entirely by adopting a reasonable alternative design, including adding a proper preservative or antimicrobial or biocidal agent such as isothiazolones, bronopol, aldehydes, and carboxylic acids such as glyoxylic or glycolic acid. Those preservatives and agents are commonly included in household cleaning products to extend the shelf-life of cleaning products, particularly cleaning products like the Products at issue in this case which are water-based and include ingredients, and are manufactured in environments, that promote bacterial growth.

61. To the extent the Products already included preservatives or antimicrobial or biocidal agents, the unreasonable risk of bacterial contamination stemming from the Products' defective design could have been reduced or avoided entirely by including a different and/or more effective preservative, antimicrobial or biocidal agent; by increasing the amount of preservatives, antimicrobial, or biocidal agents; or by including an antimicrobial or biocidal treatment for raw or finished materials.

62. The Products that Plaintiff and the Class members used had not been materially altered or modified prior to their use.

63. By marketing the Products and designing them such that they were not reasonably safe, despite the availability of safer alternatives, and failing to sufficiently warn users of the dangers, Defendant was a substantial factor in causing injuries to Plaintiff and the Class.

64. As a direct and proximate result of Plaintiff and the Class using the contaminated Products that were manufactured, designed, sold, supplied, marketed and introduced into the stream of commerce by Defendant, Plaintiff and the Class suffered physical injuries.

65. As a direct and proximate result of the foregoing, Plaintiff and the Class are entitled to damages. Further, Defendant's actions and omissions as identified in this Complaint constitute a flagrant disregard for human life, warranting exemplary and punitive damages.

### THIRD CAUSE OF ACTION
### STRICT PRODUCT LIABILITY: MANUFACTURING DEFECT

66. Plaintiff realleges and incorporates by reference the allegations elsewhere in the Complaint as if set forth fully herein.

67. Plaintiff asserts this claim on behalf of himself and the Class.

68. Defendant is the manufacturer, distributor, and/or seller of the Products.

69. A manufacturer, distributor, or seller may be held strictly liable for placing a

defective product on the market if the plaintiff's injury results from a reasonably foreseeable use of the product, including an injury caused by a manufacturing defect.

70. A manufacturing or production defect occurs when a product is manufactured in a substandard fashion or when a product is one that differs from the manufacturer's intended result or from other ostensibly identical units of the same product line. The "manufacturing defect" theory posits that a suitable design is in place, but that the manufacturing process has in some way deviated from that design.

71. Here, at the time the Products left Defendant's hands, the Products deviated from Defendant's intended result/design/specifications or deviated from other seemingly identical models, in one or more of the following ways:

   a. The Products contained contaminated raw materials, water or other ingredients leading to bacterial contamination, including *Pseudomonas* contamination;

   b. The Products and/or their constituent ingredients were cross contaminated by human or animal contact or raw materials, water or other ingredients leading to bacterial contamination, including *Pseudomonas* contamination;

   c. The Products' manufacturing and storage facilities were not kept sufficiently clean or were subjected to improper or inadequate hygiene techniques, leading to bacterial contamination, including *Pseudomonas* contamination;

   d. The Products were subject to inadequate or improper quality control, testing, and/or audit procedures, leading to bacterial contamination, including *Pseudomonas* contamination;

   e. The Products were subject to inadequate or improper shipping or storage conditions, leading to bacterial contamination, including *Pseudomonas* contamination; and/or

   f. The Products did not contain or receive the adequate or intended amount of preservatives/antimicrobial/or biocidal agents or treatment or contained or received an improper or inadequate preservative/biocidal/antimicrobial profile. In its recall announcement, Defendant admitted that the recall was required "because a preservative was not added at the intended levels during manufacturing."

72. At this early stage, Plaintiff cannot be sure of the precise design or manufacturing

defect that led to the Products' bacterial contamination because the Products' design and manufacturing processes are uniquely within Defendant's knowledge and control as the manufacturer, distributor, or seller. However, the Products should not have been contaminated with bacteria (including *Pseudomonas*), and it is certain that the Products suffered from a manufacturing and or design defect because they were contaminated with bacteria (including *Pseudomonas*) and ultimately infected and injured Plaintiff. There was no other cause of Plaintiff's injuries because the Products were the only potential source of exposure to *Pseudomonas* and Plaintiff's infection and injuries, and the Products were recalled by Defendant due to safety concerns concerning bacterial contamination. Discovery will ultimately reveal the precise nature of the Products' design or manufacturing defect, but Defendant cannot avoid liability because it alone has knowledge and evidence of the source of the Products' contamination and defect.

73. The Products' manufacturing defect existed when the Products left Defendant's hands. Plaintiff did not alter or modify the Products.

74. Plaintiff used the Products as directed and in a reasonably foreseeable manner and suffered injuries, including bacterial infections and related injuries due to the Products' manufacturing.

75. The Products' manufacturing defect proximately caused and were a substantial factor in causing Plaintiff's injuries, including bacterial infections and related injuries due to the Products' bacterial contamination. Further, Defendant's actions and omissions as identified in this Complaint constitute a flagrant disregard for human life.

76. Plaintiff and the Class suffered injuries and harm as a result of Defendant's misconduct in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
## NEGLIGENCE

77. Plaintiff asserts this claim on behalf of himself and the Class.

78. Plaintiff incorporates by reference each paragraph of this Complaint as if fully set forth herein.

79. Defendant had a duty to exercise reasonable care in designing, manufacturing, testing, marketing, and distributing into the stream of commerce the Products, including a duty to ensure that the Products did not pose a significantly increased risk of injury to Plaintiff, the Class, and other consumers.

80. Defendant failed to exercise reasonable care in designing, manufacturing, testing, marketing and distributing into the stream of commerce the Products containing bacteria. Defendant knew or should have known that the Products are marketed to be used on a regular basis to clean homes, and presented a risk of severe injuries, giving rise to injuries, pain and suffering, and debilitation, and therefore were not safe for use by Plaintiff, the Class, or other consumers.

81. Defendant failed to exercise reasonable care by failing to sufficiently warn consumers of the risks associated with the Products.

82. Although Defendant knew or should have known that the Products containing bacteria could cause severe reactions in consumers and therefore give rise to pain and suffering, debilitation, and the need for medical treatment, Defendant continued to market the Products containing bacteria without disclosing the risks or that the Products contained harmful bacteria.

83. Although Defendant knew or should have known that the Products containing bacteria could cause infections, illnesses, skin injury, and other severe reactions in consumers and therefore give rise to pain and suffering, debilitation, and the need for medical treatment,

Defendant failed to use ordinary care in warning Plaintiff, the Class, and other consumers about these risks.

84. As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered significant damages, including physical injury, and pain and suffering and will continue to suffer such damages in the future.

85. Defendant's actions and omissions were malicious, wanton, oppressive, and/or reckless.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, prays for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under Rule 23 of the Federal Rules of Civil Procedure;

(b) An Order requiring Defendant to establish a blood testing program for Plaintiff and the Class, as well as to establish a medical monitoring protocol for Plaintiff and the Class to monitor individuals' health and diagnose at an early stage any ailments associated with exposure to *Pseudomonas*;

(c) Awarding monetary damages, punitive, and treble damages;

(d) Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys, experts, and reimbursement of Plaintiff's expenses; and

(e) Granting such other and further relief as the Court may deem just and proper.

Dated: January 8, 2024

SQUITIERI & FEARON, LLP

By: _____
Stephen J. Fearon, Jr.
Paul V. Sweeny
305 Broadway, 7th Floor

                                                    New York, New York 10007
                                                    Telephone: (212) 421-6492
                                                    Facsimile: (212) 421-6553
                                                    Email: stephen@sfclasslaw.com
                                                    Email: paul@sfclasslaw.com

                                                Attorneys for Plaintiff